***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Stephenson, along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner on 3 December 2003 as:
 STIPULATIONS
1. All parties were properly before the Commission and the Commission had jurisdiction over the parties and over the subject matter pursuant to the North Carolina Workers' Compensation Act.
2. All parties have been correctly designated and there were no questions as to misjoinder or nonjoinder of parties.
3. The date of the alleged injury by accident is July 11, 2002.
4. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and there was an employer-employee relationship between the parties with defendant-employer being insured by Zurich North America.
5. The medical records of plaintiff were identified as Stipulated Medical Exhibit, and were admitted into evidence without further foundation or proof required.
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff is a 51-year old male who worked for Lighthouse Superscreens, Inc. for two (2) years. Plaintiff was hired as a Technician but was promoted to Technical Service Supervisor. The supervisor position was a hands-on job that primarily involved the maintenance and repair of LED video screens.
2. Plaintiff alleges that on July 11, 2002, he sustained an injury by accident to his left elbow. On this date, plaintiff was working in Detroit, Michigan, setting up video screen demonstrations at Ford Warehouse. While disassembling the video wall, plaintiff alleges that he hit his left elbow on a steel support.
3. Plaintiff did not call to tell his supervisor that he thought he had hurt his elbow on a steel support on July 11, 2002. Tom Wells, plaintiff's supervisor, did not receive a report of an on the job injury on July 11, 2002 or the next day when plaintiff returned to Raleigh, North Carolina. Plaintiff was subsequently on pre-scheduled vacation from July 12, 2002 through July 19, 2002. During this time, plaintiff did not report his alleged injury to the defendant-employer.
4. Plaintiff first treated for his alleged injury with Robbie Locklear-Zoll, P.A., at Southern Regional AHEC. Plaintiff complained of tingling in his left hand and discomfort in his left elbow. Plaintiff only reported that he worked with his hands a lot but did not recall a specific type of injury at a specific time. Ms. Locklear-Zoll referred plaintiff for nerve conduction studies and also began him on anti-inflammatory medications. She also wrote a note restricting plaintiff to light duty with his left arm from July 19, 2002 through August 2, 2002, meaning no lifting over fifteen pounds.
5. On July 19, 2002, plaintiff also went to Dr. Lucas Van Tran for a nerve conduction study. The study revealed that plaintiff had left ulnar neuropathy at the elbow. Dr. Tran noted that this neuropathy could be the result of a recent inadvertent compression or stretch through the Trochla or from a tight path through the Olecranon from osseous or ligamentous abnormalities. Dr. Tran also recommended a short course of anti-inflammatory agents. Plaintiff did not complain of a work-related accident at any time during this visit with Dr. Tran.
6. Plaintiff returned to Southern Regional AHEC for a follow-up on October 28, 2002. On this date, plaintiff was seen by Dr. Lenny Salzberg. Plaintiff was complaining that the anti-inflammatory medication did not help and that he would prefer further evaluation or therapy. Again, at no time did plaintiff complain of an injury related accident to Dr. Salzberg. Dr. Salzberg referred plaintiff to both physical therapy and to an orthopaedic surgeon.
7. Plaintiff then attempted physical therapy at Premier Physical Therapy and Rehabilitation. Plaintiff was evaluated on November 1, 2002 and had one other therapy session on November 15, 2002.
8. When plaintiff returned to Dr. Salzberg on January 9, 2003, plaintiff complained that he had received no benefits from physical therapy. Because of his complaints, Dr. Salzberg referred plaintiff to an orthopaedic surgeon.
9. On February 28, 2003, plaintiff saw Dr. Stanley Gilbert, an orthopaedic surgeon. Dr. Gilbert diagnosed plaintiff with left ulnar neuropathy secondary to compression/stretch injury. Plaintiff, however, described to Dr. Gilbert an injury that he allegedly sustained to his left elbow by banging his elbow on a metal support. On this date, Dr. Gilbert recommended an anterior transposition of the ulnar nerve.
10. When Dr. Gilbert first saw plaintiff on February 28, 2003, it was only one month after plaintiff was terminated from his job. In 2002 and 2003, Lighthouse sold and installed two LED video screens in the Seattle Seahawks' stadium. Plaintiff's supervisor, Mr. Wells, was notified by the project manager that someone had accessed a pornographic website on the Seattle Seahawks' computer system. Mr. Wells instructed plaintiff and his two technicians not to use the customer's computer system. When Mr. Wells was notified that pornography was accessed again, he discussed this problem with plaintiff and another technician. Plaintiff admitted that he was the one who had accessed the pornography. Futhermore, plaintiff had a history at defendant-employer of filling out expense reports inappropriately. Mr. Wells recommended that plaintiff be terminated. Plaintiff was terminated on January 28, 2003 and plaintiff, Tom Wells, and David Campbell all signed a termination document.
11. Although Dr. Gilbert initially testified that plaintiff's condition was due to the trauma that he described, namely hitting his elbow on the metal support, the Commission does not give this opinion substantial weight. Dr. Gilbert treated plaintiff approximately seven (7) months after the date of the alleged on the job injury. The historical information that plaintiff gave to Dr. Gilbert is inconsistent with the original medical records. In the notes from Southern Regional AHEC and Dr. Tran's office, no history of an on the job injury was recorded. Based on the initial medical records, Dr. Gilbert could not say that the symptoms he treated in February 2003, were related to an on-the-job injury.
12. Plaintiff's testimony regarding the alleged incident of July 11, 2002 is contradicted by his initial medical records and his subsequent behavior at his employer including the circumstances surrounding his termination.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff has not carried his burden to prove that he sustained a compensable injury on July 11, 2002 while working for defendant. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's termination from defendant-employer was not related to the alleged injury of July 11, 2002.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned enters the following award.
 AWARD
1. Plaintiff's claim is hereby DENIED.
2. Each side shall bear its own costs.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
DISSENTING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER